## Pennsylvania Company *versus* Toomey.

Where the conductor of a railroad train, acting in the line of his duty, ejects from the platform of a car a person who has no right thereon, the company is liable if he has done it in a careless, negligent or reckless manner, but not if he maliciously ejects him therefrom.

October 10th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term 1879, No. 116.

[Pennsylvania Company v. Toomey.]

Case by John Toomey against the Pennsylvania Company, operating the Pittsburgh and Cleveland Railroad, and Lyman Householder, a conductor on the railroad of said company, to recover damages for injuries alleged to have been received by having been pushed from a train of said company, while in motion, by said conductor. The facts are stated in the opinion of this court. The verdict was for the plaintiff for $500. The defendant took this writ.

*Hampton & Dalzell*, for plaintiff in error.—The company was not responsible for the act of the conductor if it was malicious: Manchester Passenger Railway Co. *v.* Donahue, 20 P. F. Smith 19.

*A. M. Watson*, for defendant in error.

Mr. Justice MERCUR delivered the opinion of the court, November 5th 1879.

This was an action on the case against the plaintiff in error, and Householder, the conductor of the train, for forcibly ejecting the defendant in error from the platform of a passenger car of the company. After the latter closed his evidence, the counsel for the defendants below moved for judgment of nonsuit. The court granted the nonsuit as to Householder, but refused it as to the railroad company.

We see no error in the first assignment. Under the conflicting evidence it was right to submit the case to the jury under proper instructions.

The alleged error arises under the second assignment in answer to the fifth point submitted by the defendant in error. The court was requested, inter alia, to charge the jury that if Toomey was ejected at the time and place in question by Householder, the conductor of the train, carelessly, wilfully or maliciously, using more force than was required, and while the train was in motion, and not at a station or some safe place, "whereby he received bodily harm and permanent injury, they might award such damages as under the evidence they found he had sustained." In answer to this point the learned judge said, "we think the term 'malicious' undesirable in this point, because it might very well be that if Householder was guilty of malice in putting the plaintiff off, it would make it such a wilful thing on his part that the principal would not be responsible for it at all. That is, if it was his design to injure the plaintiff, and he does the act with that design, maliciously, then under certain circumstances, his employer would not be liable for his act at all. I do not think that is this case, however. The defendant company is liable for the conductor's carelessness and neglect of duty in the course of his employment, and only that. If he chooses to go outside of his employment and commit a wilful, deliberate and intended injury to this plaintiff,

10 NORRIS—17

[Pennsylvania Company *v.* Toomey.]

without any regard to what he was engaged at, the employer would not be liable. So I do not think the word 'malicious' is desirable in the point, because it goes beyond what the facts in the case would warrant, and in a certain sense would prevent the plaintiff from recovering from the railroad company. If there was anything in the case presented by the plaintiff to show malice, then it would be a question for you to consider whether it was the wilful and intended design of this man to injure the plaintiff, apart from the necessity of getting him off the train. If he did this wilfully, and designedly hurt the plaintiff, the plaintiff could not recover from the company, because the company is not responsible for anything more than the neglect of duty of the conductor in the course of his employment. If he chooses to go outside of his employment, then he is not the agent of the company at all, and the principal cannot be held responsible." Justice to the court required that we should state this whole answer.

The plaintiff in error does not complain of the judge's declaration of the law, for what acts of the conductor the company would be liable, and for what it would not be liable. The complaint is that he did not submit to the jury to find whether, under the law as he declared it, the act of the conductor was of such a character that the company was not liable therefor. In view of the opinion expressed by the court as to the effect of " malicious" conduct of the conductor, it may not have been " desirable" by the defendant in error to have had it submitted to the jury, although his written point did ask for it; yet to the plaintiff in error, it was very desirable. The point having been presented, it matters not by which party, the court was under obligation to answer it, although the effect of the answer may have been such as would prevent a recovery " from the railroad company." If such would have been the proper effect of a correct answer the company was entitled to all the protection resulting therefrom. Although the learned judge stated twice that the word " malicious" was not desirable in the point; yet, nevertheless, it was there, and the court was substantially requested to instruct the jury to find whether the conductor acted maliciously in doing the act which caused the injury. Instead of submitting this question the judge said, " I do not think that is in this case ;" and again, " it goes beyond what the facts in this case would warrant." If then there was evidence sufficient to have justified a finding that the conductor committed the act in a wanton, wilful and malicious manner, there was error in the answer. What was the evidence? It apppears that a train of empty passenger cars was being moved from Manchester to the Union depot, a distance of some two or three miles. It was before daylight in the morning. The cars were locked. The defendant in error was in the employ of the company as a laborer near the Union depot. About the time the train was passing from the Manchester yard

[Pennsylvania Company *v.* Toomey.]

on to the main track, and without the knowledge of the conductor, he got on the front car and sat down on the platform. He testified that the conductor came out of the car and said to him "You get off of here; what took you on this train?" Toomey answered that he was going up to the Union depot to work on the track. The conductor replied, "I don't care, you will have to get off the train." Toomey said to him the train was going too fast to get off. The conductor answered, "Well you have to get off," following it by an oath and the peremptory order "get off." Toomey again said he could not, as it was going too fast. The conductor repeated his profane language, and that he "had got to get off," and then "he just took hold of me by this arm, and lifted me off my feet, and pushed me right off."

Each morning a train of cars was passed from its place of storage to the Union depot. There it would take its departure as a train for the carrying of passengers. Toomey testified that although while thus moving towards the Union depot, it was an empty train on which no fare was collected, yet "every morning it would be full of men who jumped on the cars." He further testified that when he was pushed off, the train was running about eight miles an hour; that it was so dark he could not see where he was going, and he fell on a pile of cinders sustaining grievous injury. It is true his evidence in many respects is contradicted by the conductor; yet the question of veracity between them, and the accuracy of memory was for the jury, and not for the court to decide. The circumstances under which the defendant in error was on the car, the speed at which it was running, the darkness of the morning, and the force and violence with which he was removed, should all be considered in arriving at a correct conclusion. If the conductor was at the time acting in the line of his duty and within the scope of his employment in putting Toomey off, under all the existing circumstances, the company is liable for that act of the conductor, although he may have done it in a careless, negligent or reckless manner; but for his unauthorized, wilful and wanton or malicious trespass, the company is not liable: Philadelphia, Germantown & Norristown Railroad Co. *v.* Wilt, 4 Whart. 143; Passenger Railway Co. *v.* Donahue, 20 P. F. Smith 119. There was sufficient evidence of malicious conduct of the conductor to have submitted it to the jury, and the second assignment is sustained.

Judgment reversed and a *venire facias de novo* awarded.